IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

TVPX ARS, INC.,                          *

    Plaintiff,                        *

vs.                                      *
                        CASE NO. 4:00-CV-217 (CDL)

GENWORTH LIFE AND ANNUITY               *
INSURANCE COMPANY,
                                *

    Defendant.                        *
_____          *

O R D E R

    TVPX ARS, Inc. filed a putative class action against Genworth Life and Annuity Insurance Company in the Eastern District of Virginia, alleging that Genworth violated the terms of its life insurance policies by imposing inflated cost of insurance charges on its insureds.  Genworth filed a motion in this Court to enjoin the Virginia action, arguing that TVPX's claims are barred by a 2004 agreement settling a prior class action about the same life insurance policies.  The Court initially concluded that res judicata barred TVPX's Virginia action and granted Genworth's prior motion to enjoin the Virginia action.  The Eleventh Circuit vacated that order and remanded "for further factual development of whether Genworth has in any way altered how it calculates or charges" cost of insurance since the 2004 settlement.  *TVPX ARS, Inc. v. Genworth Life & Annuity Ins. Co.*, 959 F.3d 1318, 1329-30 (11th Cir.

2020).  On remand, the parties conducted discovery relevant to the resolution of this issue, then Genworth renewed its motion to enforce class settlement.  The key issue remains whether the claims TVPX seeks to assert in Virginia could have been raised in the prior action.  For the reasons set forth below, the Court finds that Genworth did not meet its burden to establish that TVPX's Virginia action is premised on a continuation of the same conduct that was released in 2004.  Accordingly, Genworth's renewed motion to enforce class settlement (ECF No. 320) is denied, as is its renewed motion for leave to file a counterclaim (ECF No. 321).

FACTUAL BACKGROUND

## I.   The Original Class Action

In 2000, universal life insurance policyholders filed a putative class action in this Court against Genworth, then known as Life Insurance Company of Virginia, alleging breach of contract and fraud.  A universal policy is a type of life insurance that includes an interest-bearing account that builds cash value during the insured's life and pays a death benefit when the insured dies.  Policyholders can pay premiums to add to the cash value, and Genworth draws monthly deductions from the account's cash value.  The policy remains in force if the cash value is high enough to cover the following month's deductions.  If the cash value does not cover the next month's deductions,

2

the policy lapses unless the policyholder pays a premium that covers the deficit.   One of Genworth's monthly deductions is a "cost of insurance" charge, which is intended to compensate Genworth for the mortality risk of its insureds.   For the policies at issue here, Genworth calculates the cost of insurance using the cost of insurance rate, a "monthly rate . . . based on the insured's sex, attained age, policy duration and risk class."   TVPX Resp. to Genworth's Mot. to Enforce Ex. 2, Whitaker Pol'y 9, ECF No. 327-3 at 16.   The cost of insurance rates "are determined by [Genworth] according to expectations of future mortality."   *Id.*

In their 2000 action ("*McBride* Action"), the policyholders alleged that Genworth "wrongfully and improperly" assessed premiums in amounts higher than the premiums contracted for by the parties by "applying a reduced credited interest rate to the cash value of policies as interest rates fell over time and by applying an increased cost of insurance to cash value as policy holders grew older over time."   2d Am. Compl. ¶ 65, ECF No. 114. They also alleged that Genworth did not disclose "cost of insurance, its effect upon premiums or coverage, or that cost of insurance is determined at the whim or discretion of [Genworth] management on a monthly basis." *Id.* ¶ 34.   As a result, the policyholders believed that the premiums would be fixed or

vanishing as Genworth advertised them to be, even though Genworth knew they were not. *Id.* ¶¶ 8, 50.

The parties entered a settlement agreement that contained a broad release. The class members agreed to release "all past, present and future" causes of action that were "based upon, related to, or connected with, directly or indirectly, in whole or in part (a) the allegations, facts, subjects or issues set forth or raised in the Action or (b) the Released Conduct." Final Order & J. 6-7, ECF No. 213. They also agreed that they were "precluded and estopped from bringing any Causes of Action in the future, related to in any way, directly or indirectly, in whole or in part (a) the allegations, facts, subjects or issues set forth or raised in the Action or (b) the Released Conduct, regardless of whether such Causes of Action accrue after the Agreement is approved." *Id.* at 7. The agreement defined "Released Conduct" as including "the design, development, marketing, sale, suitability, administration, servicing, modification, underwriting, lapse, termination, performance, payments, cash values, premiums, *cost of insurance rates and charges*, death benefits, coverage, maturity date, policy loans, replacements, commissions, taxes, surrender charges, credited interest, expense charges, or other costs of any Class Policy." *Id.* at 9-10 (emphasis added).

After notice to the class members and an opportunity to opt out, the Court approved the settlement in the *McBride* Action. The final judgment entered in 2004 states that its terms "shall be forever binding on the Plaintiffs, all other Class Members and all Releasors, and shall have *res judicata* and other preclusive effect in all pending and future claims, lawsuits or other proceedings maintained by or on behalf of the Plaintiffs, any Class Member or any Releasor to the extent those claims, lawsuits or other proceedings involve matters that were or could have been raised in this Action or are otherwise encompassed by the Release." *Id.* at 5.

## II.   The TVPX Class Action

TVPX purchased a Genworth flexible premium adjustable life insurance policy that insured the life of Lucius Whitaker.  The policy, which was part of Genworth's "Contender" line of universal life insurance products, was originally issued in 1984.  Whitaker held the policy in 2004, was a member of the settlement class, and did not opt out.  TVPX, as Whitaker's successor in interest, is thus bound by the 2004 release.

TVPX brought a putative class action in the U.S. District Court for the Eastern District of Virginia.  In its amended complaint—the operative complaint in that action—TVPX alleged that Genworth was required by the policy to decrease cost of insurance due to improved expectations of future mortality but

has failed to do so, resulting in cost of insurance rates that exceed what Genworth is contractually allowed to charge. TVPX Resp. to 1st Mot. to Enforce J. Ex. A, TVPX 1st Am. Compl. ¶¶ 12, 23, 49, ECF No. 243-1. Genworth contends that TVPX's Virginia action is barred by res judicata and by the 2004 release. TVPX argues that is not precluded from pursuing the Virginia action because its present claims do not share an identical factual predicate with the claims in the *McBride* Action. Now that the parties have conducted discovery on Genworth's past and present cost of insurance practices, this issue is ripe for review.

## DISCUSSION

Claim preclusion (also called res judicata) prohibits a party from re-litigating a claim that was subject to a prior judgment on the merits. Claim preclusion "applies not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same operative nucleus of fact." *TVPX*, 959 F.3d at 1325. Genworth, as the party seeking to invoke claim preclusion, "must establish four elements: that the prior decision (1) was rendered by a court of competent jurisdiction; (2) was final; (3) involved the same parties or their privies; and (4) involved the same causes of action. *Id.* The dispute here "is about the fourth element, which asks whether a case 'arises out of the same nucleus of

operative facts, or is based upon the same factual predicate, as a former action.'" *Id.* (quoting *Griswold v. County of Hillsborough*, 598 F.3d 1289, 1293 (11th Cir. 2010)).  An identical factual predicate only exists if "the defendant was engaged in the same offending conduct during the prior action." *Id.* at 1326.  "These principles apply with equal force when considering the preclusive effect of a prior class action settlement agreement." *Id.* at 1325.

Here, TVPX's "amended complaint alleges that from 2013 through 2018, Genworth calculated [cost of insurance] in a way not consistent with mortality expectations." *Id.* at 1327; *accord* TVPX 1st Am. Compl. ¶¶ 12, 23, 49 (alleging that Genworth refused to decrease cost of insurance rates despite improved expectations of future mortality, resulting in cost of insurance charges that exceed what Genworth is contractually allowed to charge).  TVPX contends that the pre-2004 cost of insurance charges were not untethered to mortality expectations in the same way they are now, which means that TVPX's Virginia action is not premised on a continuation of the same conduct that was at issue in the *McBride* Action.  Having carefully reviewed the present record, the Court finds that while the claims in the present action allege that Genworth breached its duty to its insureds because it did not properly take into consideration mortality factors, which is similar to the general theory relied

7

upon in the *McBride* action, the factual predicate for these claims is different.  In the Virginia action, TVPX relies upon conduct that occurred after the *McBride* settlement in support of new claims that could not have been asserted in *McBride* because the conduct had not yet occurred and was a different type of conduct, albeit similar.  Because this new alleged conduct is different in kind and degree and not a mere continuation of the same previous conduct, TVPX presents claims in the Virginia action that do not share an identical factual predicate with the claims in the *McBride* Action, nor are they covered by the *McBride* release.  Accordingly, neither res judicata nor the *McBride* release precludes TVPX from asserting these new claims in the Virginia action.  Genworth's motions to enforce the judgment (ECF No. 320) and for leave to file counterclaim (ECF No. 321) are denied.

IT IS SO ORDERED, this 24th day of March, 2022.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA